UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

HAROLD LEAPHART,

    Plaintiff,

v.

JOHN A. PALAKOVICH, et al.,

    Defendants.

Civ. No. 3:11-CV-1333

(Judge Kosik)

FILED SCRANTON JAN 2 0 2012 PER ___ DEPUTY CLERK

## ORDER

AND NOW, this 20 day of January, 2012, IT APPEARING TO THE COURT THAT:

(1) Plaintiff, Harold Leaphart, an inmate committed to the custody of the Pennsylvania Department of Corrections ("DOC") and the State Correctional Institution Fayette ("SCI-Fayette"), first filed a *pro se* Complaint on July 19, 2011 with exhibits. (Doc. 1, 2).

(2) In his initial Complaint, Plaintiff alleged that Defendants[1] violated his rights by denying him due process under the law by placing him on the DOC's Restricted Release List ("RRL") in November 2008 and from his continual placement in administrative custody at SCI-Fayette. (Doc. 1). The Complaint also contained an allegation that Defendants conspired with one other to violate Plaintiff's civil rights. (*Id.*).

(3) On August 19, 2011, Defendants filed a Motion to Dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. (Doc. 11).

(4) Plaintiff filed a Memorandum in Opposition to Dismiss and Exhibits on August 20, 2011 and October 4, 2011, respectively. (Doc. 17, 18).

(5) On November 4, 2011, Magistrate Judge Martin C. Carlson filed a Report and

---

[1] Jeffrey Beard, former Secretary of the Pennsylvania DOC; David Wakefield, former Deputy Secretary; and John Wetzel, the current Secretary of the Pennsylvania DOC.

Recommendation recommending that Defendants' Motion to Dismiss Plaintiff's Complaint be granted. (Doc. 20).

(6) In response to the Report and Recommendation, Plaintiff filed a Motion for Extension of Time to Amend his Complaint on November 18, 2011. (Doc. 21). This motion was granted on November 21, 2011 and the action was remanded to the Magistrate Judge for further proceedings. (Doc. 22).

(7) Plaintiff filed an Amended Complaint on November 29, 2011, along with Exhibits on December 8, 2011. (Doc. 23, 24). Plaintiff again alleged his due process rights had been violated. (Doc. 23). Plaintiff further alleged a retaliation claim. (*Id.*).

(8) Magistrate Judge Carlson filed another Report and Recommendation on December 12, 2011 recommending Plaintiff's due process claim be dismissed with prejudice and Plaintiff's retaliation claims be dismissed without prejudice allowing Plaintiff to timely allege facts in an amended complaint which might state a claim upon which relief may be granted. (Doc. 25).

(9) In the Report and Recommendation, the Magistrate Judge summarized the factual background surrounding the allegations of Plaintiff's multiple claims. "[T]he well-pleaded facts reveal that during September 2007, Plaintiff was serving a sentence at SCI-Smithfield when the Pennsylvania State Police charged him with assaulting a Correctional Officer. As a result of that assault, two SCI-Smithfield staff members were injured, requiring outside medical treatment. Subsequently, the case proceeded to trial and [Plaintiff] was convicted of the assault and sentenced to 10 to 20 years in prison, consecutive to the sentence he was serving when he committed the assault." (Doc. 25, p. 2-3) (internal citations omitted).

(10) Plaintiff filed a Second Amended Complaint on December 27, 2011 alleging a retaliation claim against Defendants named in the original Complaint and against George N. Zanic, District Attorney of Huntingdon County, Pennsylvania. (Doc. 26). Plaintiff did not address the due process claims.

2

(11) Pursuant to Local Rule 72.3, Plaintiff was given fourteen (14) days, after being served with a copy of the Report and Recommendation, to make any objections to the Magistrate Judge's proposed findings, recommendations, or report. Plaintiff failed to file objections.

AND IT FURTHER APPEARING THAT:

(12) If no objections are filed to a magistrate judge's report and recommendation, the plaintiff is not statutorily entitled to a de novo review of his claim. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985). Nonetheless, the usual practice of the district court is to give "reasoned consideration" to a magistrate judge's report prior to adopting it. *See Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987).

(13) We have reviewed the Report of the Magistrate Judge, and we agree with the Recommendation.

(14) Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A well-pleaded complaint must contain more than mere legal labels and conclusions; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). A complaint must recite factual allegations sufficient to show that plaintiff has a plausible claim for relief. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009). Rule 8(a) of the Federal Rules of Civil Procedure goes on to explain that a "short and plain statement of the claim showing that the pleader is entitled to relief" is also needed. Fed. R. Civ. P. 8(a).

(15) "In analyzing a procedural due process claim, the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment. Once we determine that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect

it." *Shoats v. Horn,* 213 F. 3d 140, 143 (3d Cir. 2000) (internal citations omitted). These protected liberty or property interests generally arise from the Due Process Clause or a state-created statutory entitlement. *Id.*

(16) In *Sandin v. Conner,* the Supreme Court "concluded that [the prisoner in that case] did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day detention, although punitive, 'did not exceed similar, but totally discretionary confinement in either duration or degree of restriction.' In finding that the prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Court considered the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement." *Id.* at 143-144.

(17) Under DOC regulations, an inmate may be transferred from general population to administrative custody by order of the shift commander for various reasons.[2] DCM-ADM

---

[2]These reasons include:

a. the inmate is in danger by/from some person(s) in the facility and cannot be protected by alternate measures;

b. placement in general population would endanger the inmate's safety or welfare when it is not possible to protect him/her by other means;

c. the inmate is a danger to himself/herself or others;

d. the inmate is suspected of being or is the instigator of a disturbance;

e. the inmate would pose an escape risk in a less secure status;

f. the inmate has been charged with, or is under investigation for a violation of facility rules and there is a need for increased control pending disposition of charges or completion of the investigation;

802, Section 1(A)(1). Administrative Custody ("AC") is defined as "a status of confinement for non-disciplinary reasons that provides closer supervision, control, and protection than is provided in general population." DC-ADM 802, Section 3(A)(1). An inmate confined on AC status does not have the privileges available in general population security level housing, and instead, receives a more limited set of privileges afforded within the Restricted Housing Unit. *Id.*

(18) Inmates on the RRL are a subset of the inmates who have been placed in the RHU on AC status. A Facility Manager or his or her designee may request that the Secretary place an inmate on AC status on the RRL when the inmate "poses a threat to the secure operation of the facility and where a transfer to another facility or jurisdiction would not alleviate the security concern." *Id.* at Section 1(B). Designation as RRL only changes the final decision-maker, with the authority to release the inmate from AC status into the prison's general population, from the Program Review Committee ("PRC") to the Secretary or his or her designee. *Id.*

(19) RRL and non-RRL inmates have their custody status periodically reviewed by the

---

g. the inmate has requested and been granted self-confinement;

h. the inmate is being held temporarily for another authority and is not classified for the general population of the holding facility; however, a Parole Violator (PV) and temporary transfers from another facility are eligible for release to general population;

i. the inmate has a detainer for a pending capital case, for which the prosecution is seeking the death penalty;

j. no records and/or essential information are available to determine the inmate's custody level or housing needs; and/or

k. the inmate has completed a Discipline Custody (DC) sanction but one or more of the above reasons exist, (or the facility has an operation need (e.g., appropriate bed space) to temporarily assign the inmate to AC status).

DC-ADM 802, Section 1(A)(1).

PRC. Non-RRL inmates can be released into general population by the PRC or Superintendent. *See* DC-ADM 802, Section 4(A). Release of an RRL inmate into general population, however, requires the approval of the Secretary of Correction or his or her designee, though the PRC may recommend release. *See id.* In all other respects, RRL inmates are treated identically to their non-RRL counterparts on AC status. *See id.*

(20) Plaintiff was placed in the RHU after the Hearing Examiner convicted him of institutional misconduct for violating prison rules and sentenced him to 90 days disciplinary time. (Doc. 2, Ex. 2). After his disciplinary sentence was served, staff placed him on AC status[3]. (Doc. 2). At some point thereafter, Plaintiff was placed on the RRL.

(21) Plaintiff's placement on RRL did not violate his due process rights since it did not impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.[4]

(22) Plaintiff's remaining on RRL or AC status for an excessive period also did not violate his due process rights since the documents he has attached to his Complaint

---

[3]Plaintiff received a DC-141 "other" report and a hearing regarding this placement. (Doc. 2).

[4]*See e.g., Sandin,* 515 U.S. 72, ("segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"); *Bowen v. Ryan,* 248 F. Appx. 302, 304 (3d Cir. 2007) ("Appellant's claim that he was placed on the Restricted Release List without due process was properly dismissed. Placement on the List did not deprive Bowen of his liberty, privileges, or any other constitutionally protected liberty interest."; *Nifas v. Beard,* 2009 U.S. Dist. LEXIS 93235, 48-49 (W.D. PA. 2000) ("[P]lacement on the RRL could not amount to a deprivation of a liberty interest at all because, at most, it accomplishes only a change in the identity of the decision maker as to whether Plaintiff should be released from the AC or not.") *affirmed* and modified on other grounds at *Nifas v. Beard,* 374 Fed Appx. 241 (3d Cir. 2010) ("Placement on the Restricted Release List does not deprive an inmate of a liberty interest protected by the Due Process Clause"); *Washington-El v. Beard,* 2011 U.S. Dist. LEXIS 24562 (W.D. Pa. 2011) ("First, with respect to plaintiff's initial placement in administrative segregation, his claim of a violation of the Fourteenth Amendment's Due Process Clause must fail because he had no liberty interest in his initial placement in administrative confinement.") (internal citations omitted).

demonstrate that he has received all constitutionally mandated due process to which he was entitled.[5] (Doc. 2, 18).

(23) Plaintiff also asserts a retaliation claim against Defendants in his Amended Complaint. (Doc. 23). He alleges he was placed in SMU in retaliation for filing this law suit. (*Id.* at 4).

(24) The Magistrate Judge recommended that the motion to dismiss should be granted without prejudice in regards to the retaliation claim, but that Plaintiff should be given a chance to amend his Complaint for a second time. (Doc. 25).

(25) Although Plaintiff's Amended Complaint makes reference to being placed in SMU in retaliation for filing a lawsuit, Plaintiff has filed a Second Amended Complaint in which he claims a conspiracy between the District Attorney of Huntingdon County and prison officials to keep Plaintiff under AC status in the RHU in retaliation for Plaintiff not pleading guilty and moving forward with a jury trial in regards to the September 2007 assault. (Doc. 26).

(26) We will adopt the December Report and Recommendation of Magistrate Judge Carlson. Specifically we will adopt the recommendation dismissing the due process claim with prejudice. Because Plaintiff has filed a Second Amended Complaint raising a retaliation claim, we will remand the case back to Magistrate Judge Carlson for further proceedings consistent with this Order.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

(1) The December 12, 2011 Report and Recommendation (Doc. 25) of Magistrate Judge Carlson is ADOPTED;

(2) Plaintiff's claims with respect to due process are DISMISSED WITH PREJUDICE; and

---

[5] A prisoner in long-term administrative segregation receives due process when the prisoner receives notices of charges against him, followed by an opportunity to be heard, the right to appeal to the prison's superintendent, and periodic review by the PRC. *Shoats*, 213 F.3d at 145.

(3) The Clerk of Court is directed to REMAND this case (Doc. 26) to the Magistrate Judge for further proceedings consistent with this Order.

                                                                /s/ Edwin M. Kosik
Edwin M. Kosik
United States District Judge